OaRutheb.s, J.,
delivered the opinion of the Court.
The only contest, in this case, is upon the petition of S. D. Rowan, to be relieved from the purchase of certain lots of ground in and near the town of McMinn-ville, sold under decree of the Chancery Court in these cases, upon the ground, that owing to the defects in the proceedings, a good title cannot be made to him.
*655 Win. Rankin and Levander Pope purchased of E. K. Bell, thirteen and one-half a,cres of ground, including 'a tavern-house, in McMinnville, at $3,000, in 1852. Pope died soon after, leaving Musadora, his widow, and Byron, his only child. He had paid only about $350 of the consideration before • his death, and Rankin largely more. Black administered on the estate.
Rankin filed his bill against the administrator, widow, and minor heir of Pope, charging his excess of pay-' ment, that the estate was insolvent, the land not susceptible of equal division, and praying that it might be sold, the payments equalized, and the proceeds divided, after the full- payment of the consideration; taxes, and expenses. Such proceedings were had as that the land ivas sold in six lots, on the 9th of December, 1854, for $3,670. Rankin was the purchaser of four of the lots, at $2,880. At March Term, 1855, the report of this sale was confirmed, and title vested in the purchasers, subject to the lien for the purchase money.
Musadora Pope for herself, and as next friend for her son Byron, filed her bill on the 14th of December, 1856, to set aside the sale which had been made, and have a division or resale, because the former proceedings had been such as not to be binding upon them. This bill was filed against Rankin and the other purchasers, and L. D. Mercer, who had become administrator de bonis non of L. Pope. The prayer was granted, and a resale ordered. There was no exception to this decree on the part of the purchasers or the original complainants, although they resisted it in their answers, and contended for the validity of the sale under which they purchased. But the Court set it aside, because *656 the infant had not properly become a party, and the parties acquiesced.
At the resale, on the 26th of September, 1857, S. D. Rowan being substituted to the bids of J. M. Cain, was the purchaser of lots Nos. 1 and 2, for $3,190. Britton and others bid off the other four lots at $1,105 — making a total of $4,385, being an advance upon the first sale, of $715.
On the 23d of March, 1858, the said S. D. Rowan, the largest purchaser under the last sale, filed his petition to be released from his purchases, because a good title could not be made to the lots, as the sale was irregular and void as to the infant. The widow, and the guardian ad litem of the infant, answer and insist that the sale was legal, and attribute the anxiety of the petitioner to pry out defects in the proceedings, to a fall in the price and value of the property. The intelligent guardian of the minor says in his answer, that it would be most unjust and injurious to his ward to annul the sale, as the property could not be sold for so much again. So far, then, as the interest of the infant is concerned, the' proceedings should be sustained, if consistent with the law. The question, in such a case, is, was the sale utterly void, or only voidable, and capable of confirmation.
The defects are thus stated in the petition: “ A good and sufficient title cannot be made to your petitioner for the reason that no proof was taken as to the necessity of selling the lots, in order to divide the same among the claimants, and for the further reason, that no account, previous to said sale, of assets, debts, and credits of the estate of said Levander Pope, de *657 ceased.” Again, it is stated that there was no proof that partition could not be made, nor that it was manifestly to the interest of the parties to sell. We will briefly examine these grounds of objection to the title.
This is not the ordinary case of an application for a sale for partition by heirs or tenants in common, nor by the administrator or creditors for the payment of debts on failure of assets, nor yet is it the usual case of a bill by a vendor to- assert his lien for the purchase money. It rather combines some of the features of all, with the additional feature, that the original complainant, Rankin, and the decedent, L. Pope, were joint purchasers, who made unequal payments of the consideration. The main object of the bill is to equalize the payments by the sale of the property, and divide the profits, if any. It is charged that the decedent only paid $350 in his lifetime, and his administrator about $400 more, and that the balance was paid by the complainant. The administrator is made a party to ascertain the state of accounts, and make an exhibit of the assets in his hands. He answers that the estate is insolvent, as charged in the bill, and so it turns out upon the report of the master afterwards made. The widow and infant heir were made parties, but because the answers of the guardian ad litem and of the widow were not such as the rules of the Court required, the first sale was set aside, upon their cross-bill for that purpose, and the re-sale upon the prayer of their bill ordered. It is difficult to see how any defects in the service of process, or answer of the infant in the original ease, if any existed, could affect-the last sale, as that was made when he was propei’ly before the Court, *658 by next friend, in the cross-bill, with a prayer for division or sale.
We held, in the case of Gee v. Gee, 2 Sneed, 395, that in case of a joint purchase of land, if one paid more than his half of the purchase money, a Court of Equity would hold the land bound for the excess. In that case it was insisted that there was a resulting trust to the extent of the over-payment, and that each was entitled to an interest in the land to the extent of his payment. So that if one had paid none, he would have no interest, though a joint purchaser. That would be so in the case of a resulting trust. But that was not such a case, nor is this.
Where the adventure is joint, each is entitled to participate equally in profit or loss, without regard to equality in payment. But it is a clear principle of equity, that the common property will be held bound for any excess paid by one over the other. It is analogous to the law of partnership by which, as between the partners, the capital must be equalized out of the partnership effects before the profits can be divided.
This case, then, does not fall under the rules settled by our decisions in cases of sale for partition, and for the payment of debts, in relation to the necessary proof, accounts, &c. And that is the ground upon which the petition is based. It appeared by the bill and answers in the original case, that the complainant and deceased were joint purchasers of the land and lots, that their payments were unequal, and also that the estate of Pope was insolvent. This was enough to authorize the sale of the property for the equalization of payments and division of profits. For this the land was bound *659 at all events, where there were not sufficient personal assets. But let this be as it may, the sale was made ultimately upon the bill of the infant, by next friend, and all necessary accounts taken, either before or after the sale, to settle and adjust the rights of the parties in the proceeds. The infant, as we see, would be injured by setting it aside, and he is before the Court in a manner and form in which he can legally be divested of his title for the benefit of the purchaser, and, therefore, there can be no objection to the validity of the sale. The widow releases her claim of dower in the interest of her husband in this property. There is, then, no difficulty as to the title, and the decree of the Chancellor dismissing the petition and ordering the money to be paid by the purchaser, is affirmed. The cause will be remanded for further proceedings under the decree for the full settlement of the rights of the parties.